**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| JEFFREY GRIFFITH, JONATHAN BLOCHER, ANNETTE RODRIGUEZ, And JOSEPH LEVI, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>LANDRY'S, INC., CHLN, INC. D/B/A/ CHART HOUSE F/K/A LANDRY'S SEAFOOD HOUSE, )<br><br>Defendants. ) | Civil Action No. 8:14-cv-03213-MSS-JSS |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND**
**MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

BACKGROUND ............................................................................................................ 2

I.     FACTUAL BACKGROUND ............................................................................... 2

II.    LEGAL BACKGROUND .................................................................................... 5

III.   PLAINTIFF'S CLAIMS ...................................................................................... 9

ARGUMENT ................................................................................................................. 10

I.     CLASS CERTIFICATION STANDARD ......................................................... 10

II.    THIS CASE MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION. ......... 11

     A.    The Class Is Adequately Defined And Clearly Ascertainable ............................ 13

     B.    Rule 23(a) Of The Federal Rules Of Civil Procedure Is Satisfied ....................... 14

          1.    The Class Is Sufficiently Numerous. ...................................................... 14

          2.    There Are Sufficient Common Issues. ..................................................... 15

          3.    The Named Plaintiff's And Class Members' Claims Are Typical. .......... 17

          4.    The Named Plaintiff And Class Counsel Will Adequately Represent The Interests Of The Class ...................................................... 18

     C.    Rule 23(b)(3) Of The Federal Rules Of Civil Procedure Is Satisfied .................. 19

          1.    Common Factual And Legal Questions Predominate ............................. 19

          2.    The Class Action Mechanism Is Superior. ............................................. 21

III.   THE COURT SHOULD DIRECT A CLEAR AND CONCISE NOTICE. .................... 23

CONCLUSION .............................................................................................................. 25

CERTIFICATE OF SERVICE ...................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

Alonso v. Uncle Jack's Steakhouse, Inc., 08-Civ-7813, 2011 U.S. Dist. LEXIS 106356 (S.D.N.Y. Sept. 21, 2011) ................................................................................................ 12

Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184 (2013) ..................... 10, 17

Ault v. Walt Disney World Co., 692 F.3d 1212 (11th Cir. 2012) ................................................ 17

Bussey v. Macon Cnty. Greyhound Park, Inc., 562 Fed. Appx. 782 (11th Cir. 2014) ................ 13

Butler-Jones v. Sterling Casino Lines, L.P., No. 6:08-CV-01186, 2008 U.S. Dist. LEXIS 102256 (M.D. Fla. Dec. 18, 2008) ....................................................................... 10

Colomar v. Mercy Hosp., Inc., 242 F.R.D. 671 (S.D.Fla.2007) .................................................. 17

County of Monroe, Fla. v. Priceline.com, Inc., 265 F.R.D. 659 (S.D. Fla. 2010) ....................... 15

Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546 (11th Cir.1986) ................................................. 14

Davis Bros., Inc. v. Donovan, 700 F.2d 1368 (11th Cir. 1983) .................................................... 7

Deininger v. Palm Beach County, Florida, 922 So. 2d 1102 (Fla. 4th DCA 2006) .................... 12

Diaz v. S&H Bondi's Dept. Store, Inc., No. 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683 (S.D.N.Y. Jan. 18, 2012) ....................................................................................... 24

Donovan v. New Floridian Hotel, Inc., 676 F.2d 468 (11th Cir. 1982) ................................... 7, 16

Driver v. AppleIllinois, LLC, 265 F.R.D. 293 (N.D. Ill. 2010) .................................................... 22

Dyer et al. v. Wells Fargo Bank, N.A., No. C 13-2858 (N.D. Cal.), ........................................... 19

Espinoza v. Galardi S. Enterprises, Inc., No. 14-21244-CIV, 2016 U.S. Dist. LEXIS 2904 (S.D. Fla. Jan. 11, 2016) ....................................................................... 10

Faught v. Am. Home Shield Corp., 668 F.3d 1233 (11th Cir. 2011) ........................................... 24

Garcia v. Elite Labor Serv., No. 95C2341, 1996 U.S. Dist. LEXIS 9824 (N.D. Ill. July 11, 1996) ...................................................................................................... 24

Garcia-Celestino v. Ruiz Harvesting, Inc., 280 F.R.D. 640 (M.D. Fla. 2012) ............................ 15

Guzman v. VLM, Inc., Case No. 07-cv-1126, 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. 2008) ............................................................................................................... 22

Hassinger v. Sun Way Enters., Case No. 6:12-cv-10520, 2014 U.S. Dist.
 LEXIS 73325 (M.D. Fla. May 29, 2014).......................................................... 7

In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088 (5th Cir. 1977) .................................. 24

Klay v. Humana, Inc., 382 F.3d 1241 (11th Cir.2004) ................................................. 21

Lebron v. Wilkins, 277 F.R.D. 664 (M.D. Fla. 2011) .................................................. 17

Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674 (S.D.Fla.2013) ............... 14

Matamoros v. Starbucks Corp., 699 F.3d 129 (1st Cir. 2012) ....................................... 12

May v. Steak N Shake Operations Inc., No. 3:14-cv-912, 2014 U.S. Dist.
 LEXIS 174855 (M.D. Fla. Dec. 18, 2014) ............................................................... 6

Morgan v. Coats, 33 So. 2d 59 (Fla. 2d DCA 2010) .................................................... 12

Morgan v. Public Storage, No. 14-cv-21559, 2016 U.S. Dist. LEXIS 54937
 (S.D. Fla. Mar. 9, 2016)...................................................................................... 24

Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950) ............................... 24

Noletto v. NationsBanc Mortg. Co. (In re Noletto), 281 B.R. 60 (S.D. Ala. 2001) ...................... 1

Overka v. American Airlines, Inc., 265 F.R.D. 14 (D. Mass. 2010) ...................................... 19, 22

Palm Beach Golf Ctr.-Boca, Inc. v. Sarris, 311 F.R.D. 688 (S.D. Fla. 2015) ...................... passim

Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508 (N.D. Cal. 2008) ...................................... 22

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ................................................. 24

Prior et al. v. Ark Rustic Inn, LLC, et al., No. 14-006752 (Fla. 9th Judicial Cir.) ...................... 19

Roundtree v. Bush Ross, P.A., No. 8:14-cv-357, 2015 U.S. Dist. LEXIS 128404
 (M.D. Fla. Sept. 17, 2015). ................................................................................. 24

Schmidt v. Smith & Wollensky, LLC, 268 F.R.D. 323 (N.D. Ill. 2010)...................................... 21

Schojan v. Papa Johns Intern., Inc., 303 F.R.D. 659 (M.D. Fla. 2014) ...................................... 19

Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234 (2d Cir. 2011)............... 12

Sosa v. Safeway Premium Finance Co., 73 So. 2d 91 (2011) ...................................... 14

Strong v. Williams, No. 78-124, 1980 U.S. Dist. LEXIS 14185 (M.D. Fla. Apr. 22, 1980) ......... 7

Tampa Service Company, Inc. v. Hartigan, 966 So. 2d 465 (Fla. 4th DCA 2007) ...................... 12

Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036 (2016) .......................................................... 20

Vines v. Covelli Enters., No. 12-0028, 2012 U.S. Dist. LEXIS 170870
   (W.D. Pa. Nov. 30, 2012) ...................................................................................................... 24

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011)................................................... 10, 15, 17

Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193 (S.D.N.Y. 2011)...................... 12, 21

Williams v. Mohawk Industries, Inc., 568 F.3d 1350 (11th Cir. 2009)........................................ 20

Williams-Green v. J. Alexander's Restaurants, Inc., 277 F.R.D. 374 (N.D. Ill. 2011) ............... 12

**Statutes**

29 U.S.C. § 203................................................................................................................................. 6

29 U.S.C. § 216................................................................................................................................. 8

Fla. Stat. § 448.110 .................................................................................................................. 11, 23

**Other Authorities**

7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005) .. 21

Dec. 5, 2005, Fla. Senate Journal, 2005 Spec. Sess. N, No. 1 ...................................................... 11

Dept. of Labor Op. Ltr., May 27, 1975, 1975 DOLWH LEXIS 101.............................................. 8

Dept. of Labor Op. Ltr., Sept. 8, 1997, 1997 WL 998034.............................................................. 8

U.S. Dept. of Labor Field Operations Handbook .................................................................. 6, 7, 8

**Rules**

Fed. R. Civ. P. 1.220.......................................................................................................... 11, 12, 23

Fed. R. Civ. P. 23 ..................................................................................................................... passim

**Regulations**

29 C.F.R. § 531.3 ............................................................................................................................. 6

**Constitutional Provisions**

Article X, Section 24 of the Florida Constitution ................................................................. passim

Plaintiff Jonathan Blocher,[1] on behalf of himself and other former and current tipped employees of Defendants' restaurants, challenges the legality of Landry's Employee Discount Program ("EDP")—a program that Defendants have implemented and administer in a uniform way at all of their restaurants. Specifically, Defendants deducted money from Plaintiff and class members' tipped sub-minimum hourly wages and/or directly from their tips for participation in the EDP. Plaintiff alleges that Defendants' (Landry's, Inc. and CHLN, Inc.) deductions from tipped employees' wages and tips violate Florida's Minimum Wage Act. Plaintiff hereby moves for certification of the following class:

> All individuals who worked at Chart House and/or Landry's Seafood House restaurants in Florida at any time during the Relevant Class Liability Period [beginning December 14, 2009] for whom Defendants claimed a tip credit to meet Defendants' minimum wage obligations under Article X, Section 24 of the Florida Constitution and who participated in Defendants' Employee Discount Program.

First Am. Comp. (ECF Docket No. 74), ¶ 53.

This case relies on common evidence for all class members, including: Landry's companywide policies and procedures; class members' payroll data; Defendants' chart identifying all class members and the extent of their participation in the EDP; and both parties' expert reports analyzing the central legal claim in the case on a classwide basis. As set forth

---

[1] Plaintiffs Jeffrey Griffith and Annette Rodriguez accepted Defendants' offer of judgment on May 12, 2016. As a tipped employee who had deductions made from his wages and/or tips for participation in the EDP, Plaintiff Blocher can represent the class on the count for unpaid minimum wages under the Florida Minimum Wage Act asserted in this case attributed to Defendants' practice of deducting wages and/or tips from their sub-minimum wage employees for payment of the EDP. However, in the event the Court determines for any reason that additional class representatives would be appropriate, on May 13, 2016, Plaintiff Joseph Levi served notice of his intent to become a class representative for the Florida Minimum Wage Act claims. Levi is willing to serve as a class representative and has satisfied the notice requirements of Florida Statute § 448.110(6). See Notice of Intent to File FWMA attached as Exhibit 1. As a result of Defendants' successful effort to pick off two of the named plaintiffs in this case, there is good cause for the Court to allow Levi to intervene as a class representative at this time if necessary to serve and protect the claims of the class. See Noletto v. NationsBanc Mortg. Co. (In re Noletto), 281 B.R. 60, 62 (S.D. Ala. 2001) (allowing a new class representative to intervene when a valid claim existed at the commencement of the case).

below, this case satisfies all requirements for class certification.  Accordingly, Plaintiffs respectfully request that this motion be granted.

## BACKGROUND

### I.    FACTUAL BACKGROUND

Since December 2009, Defendants have operated seven Chart House restaurants and four Landry's Seafood House restaurants in Florida.  The seven Chart House restaurants are located in Daytona Beach, Fort Lauderdale, Jacksonville, Longboat Key, Melbourne, Miami, and Tampa.  The four Landry's Seafood House restaurants are located in Destin, Orlando, Pensacola, and Tampa.  Landry's Seafood House Tampa closed in 2010, and Chart House Tampa opened in 2010.  Landry's Seafood House Destin closed in 2011.  The rest of the restaurants have been in operation for the entire class period.[2]

At all eleven of the restaurants at issue in this case (and at their other restaurants in Florida and around the country), Defendants have operated the EDP for the entire class period. The EDP applies to all Landry's employees.  It is described in the Landry's, Inc. Employee Handbook, a document which sets forth the policies and procedures for employees at all Landry's restaurants, including the Chart House and Landry's Seafood House restaurants in Florida.  Landry's, Inc. Employee Handbook – November 2014, at 34-36, 495-561, attached as Exhibit 3.  The EDP is also described in a separate policy document that Defendants have developed, entitled "Landry's Employee Discount Program."  Landry's EDP – February 2015, CHLN 1146-47, attached as Exhibit 4.[3]  Only employees who participate in the EDP are entitled to half-price meals and free coffee, tea, and fountain soda during their shifts.  As Defendants emphasize in the Landry's Handbook:  "Employees who elect not to participate in the Program

---

[2]    Deposition of Laura Jasso ("Jasso Depo."), attached as Exhibit 2, at 17-23.
[3]    This document has been marked by Defendants as "Confidential" and Plaintiffs have moved the Court for leave to file this document under seal pursuant to the parties' Confidentiality Agreement.  ECF Docket 118.

will be charged full price for all food and beverages consumed. Non-participants are not entitled to complimentary coffee, tea, and soft drinks during work hours. . ."  Handbook (Exh. 3) at 34.[4]

All employees who participate in the EDP must pay Landry's for their participation.  The amount charged for the EDP was $4.75 per week, or $9.50 biweekly, until October 1, 2014, at which time the cost increased to $4.90 per week, or $9.80 biweekly.  EDP Changes Memorandum, Sept. 10, 2014, CHLN 000455, attached as Exhibit 8.  This cost is applied to all Landry's employees who participate in the EDP, including employees at Chart House and Landry's Seafood House employees in Florida.  See Liebelt Depo. at 27-28 (confirming when a memo is addressed to all employees it is intended for all employees of Landry's at all concept restaurants).  Id.  If an employee has enough money in his or her paycheck to pay the full cost of the EDP, then that amount is deducted from the employee's paycheck.  However, if an employee's earnings in his or her paycheck, after tax withholdings, are insufficient to pay the entire cost of the EDP,[5] then the employee is required to pay the amounts owing out of his or her tips at the end of his or her next shift.  See, e.g., First Am. Comp. ¶¶ 32-36; Jasso Depo. at 134-135; Landry's Manager's Operations Manual, CHLN 1029-1086, attached as Exhibit 11,[6] at

---

[4]      EDP policy directives and communications are administered from Defendants' single Human Resources Department Vice President, Julia Liebelt, and Human Resources Director, Laura Jasso (who work out of Defendants' corporate office in Houston, Texas) to restaurant employees.  *See* Deposition of Julia Liebelt ("Liebelt Depo."), attached as Exhibit 5, at 14, 18-19, 27-28; Jasso Depo. at 106-107.  The Regional Directors over all the Chart House and Landry's Seafood House restaurants in Florida testified that the EDP is a corporate policy made available and applied equally to all their employees in their restaurants.  *See* Deposition of Edwards Kelly ("Kelly Depo.") attached as Exhibit 6, at 8, 14, 22-25; Deposition of Christine Frawley ("Frawley Depo.") attached as Exhibit 7, at 6-7, 32-33.

[5]      This occurs with some frequency for tipped employees who receive tips in cash but have tax withholdings taken on their paychecks for this tip income.  *See* Griffith pay records, CHLN 330, 336, 338, attached as Exhibit 9; Levi Payroll Registers, CHLN 15322, 15325, 15326, attached as Exhibit 10.  Payroll Registers have been marked by Defendants as "Confidential – Attorneys' Eyes Only" and Plaintiffs have moved the Court for leave to file Levi's Payroll Registers under seal pursuant to the parties' Confidentiality Agreement.  ECF Docket 118.

[6]      This document has been marked by Defendants as "Confidential" and Plaintiffs have moved the Court for leave to file this document under seal pursuant to the parties' Confidentiality Agreement.  ECF Docket 118.

3

1057-1064 (describing procedures for collecting EDP payments as a "paid-in" from tips at check-out).[7]

Tipped employees at Chart House and Landry's Seafood House in Florida are paid an hourly rate that is below the full Florida minimum wage.  See Jasso Depo. at 39-40.  Tipped employees receive their tip income either as part of the cash-out procedure at the end of their shifts or, for employees whose tip income comes from tip-sharing from other employees as opposed to directly from customers, as part of their earnings in their paychecks.  Id. at 78-79, 82.[8]

Defendants have produced classwide data showing who has participated in the EDP and the amounts that they have paid for the EDP.  Specifically, during discovery, Defendants produced a document entitled Defendants' THIRD REVISED Putative Class Member List, CHLN 19957-19992, attached as Exhibit 12.[9]  This document lists members of the putative class who participated in the EDP between December 11, 2009 and November 9, 2015 by a unique identifier and states for each class member:  hire date; termination date; locations at which the

---

[7]    Defendants' Manager's Operations Manual requires that "[m]anagers must collect for any for any discount program deductions not taken form an employee's paycheck within seven days of the missed [i.e., uncollected] deduction."  See Landry's Manager's Operations Manual at 1057-1064; Jasso Depo. at 108-109, 120; see also Kelly Depo. at 61-62, 69, 92-95 (Q Is the process for collecting missed payroll deductions the same in all your restaurants? A  To the best of my knowledge, yes."); Frawley Depo. at 16-17 (confirming that as a Regional Training Manager for Landry's Seafood House she trained managers using the Manager's Operations Manual).

[8]    As Defendants corporate representative confirmed, the same centralized payroll (Oracle) and timekeeping systems (Aloha) are used to process employees' pay and usage of the EDP for all Chart House and Landry's Seafood House locations in Florida.  See Jasso Depo. at 47 ("Q And tell me again what the Oracle system is?  A Oracle is our payroll system.  Q And that's the payroll system for the whole Landry's operations?  A Yes  Q Including Chart House and Landry's Seafood House?  A Yes); id. at 48 (Q: And how is the Aloha built into payroll? A That's our timekeeping system and – where the rate of pay is held, and that information is transferred over to our Oracle system on a biweekly basis.  Q And the Aloha system is used at all Chart House restaurants and Landry's Seafood House restaurants in Florida? A Yes Q And has been for the whole relevant time period?  A Yes. . . .); see also Kelly Depo. at 28 (stating that employee purchases using the EDP are tracked in Aloha at Chart House restaurants in Florida); Frawley Depo. at 86-87 (confirming all "paid-ins" are entered into the Aloha system at the store level at all Landry's Seafood Houses in Florida).

[9]    This document has been marked by Defendants as "Confidential-Attorneys' Eyes Only" and Plaintiffs have moved the Court for leave to file this document under seal pursuant to the parties' Confidentiality Agreement.  ECF Docket 118.

employee worked; minimum pay rate; maximum pay rate; and total EDP amount paid via

payroll.  There are a total of 2,013 individuals listed on this document.  Defendants have also

produced documents showing every time when a class member paid for some or all of the cost of

the EDP in tips when they did not have enough money in their paychecks to pay the entire EDP

deduction.  See Bev Deductions Paid In Data, CHLN 15616-15698, attached as Exhibit 13.[10]

These documents show the date on which the paid-in was made, the employee number, the

location, and the amount paid.[11]

     As discussed in Section II below, Defendants' deductions for the EDP run afoul of

Florida Minimum Wage Act ("FMWA") if those deductions exceeded Defendants' reasonable

costs for the program.  In other words, Defendants may not legally profit from the EDP.  The

parties exchanged expert reports during discovery on the issue of whether or not the payments by

tipped employees for the EDP exceeded Defendants' reasonable costs for the program.  The

reports performed by all of the experts, including Defendants' expert, analyzes information on a

classwide basis, comparing the amounts paid by all members of the class with the reasonable

costs to Defendants for the EDP.  See Updated Report of Defendants' expert, Steven S. Oscher,

Feb. 22, 2016, and exhibits, attached as Exhibit 14; Report Prepared by Plaintiffs' expert, Dr.

Stephen M. LeBruto, CPA, CHAE, Mar. 10, 2016, attached as Exhibit 15.

## II.    LEGAL BACKGROUND

     Article X, Section 24 of the Florida Constitution provides that Florida employers may

pay tipped employees a tipped minimum wage rate, but only if they "meet[] the eligibility

---

[10]     This document has been marked by Defendants as "Confidential" and Plaintiffs have moved the Court for leave to file this document under seal pursuant to the parties' Confidentiality Agreement.  ECF Docket 118.

[11]     Defendants uniformly track EDP payments and deductions through reports generated by their electronic timekeeping and pay systems.  See Jasso Depo. at 105, 113-116 (explaining the unused deduction report, which tracks employees who did not have sufficient payroll wages for the EDP deduction to be made from payroll is automatically generated by corporate and sent to each restaurant for collection); see also Landry's Manager's Operations Manual, Exh. 11, at 1057-1064.

requirements for the tip credit under the FLSA." Fla. Const. Art. 10 § 24(c). Accordingly, the

FLSA, as interpreted by the United States Department of Labor and as discussed in applicable

case law, is relevant for purposes of determining if there has been a violation of the Florida

Constitution.

It is the employer's burden to demonstrate that it has satisfied the requirement to be

entitled to take the tip credit. See, e.g., May v. Steak N Shake Operations Inc., No. 3:14-cv-912,

2014 U.S. Dist. LEXIS 174855 at *1 (M.D. Fla. Dec. 18, 2014); see also ECF Doc. 71

(confirming Defendants have the burden of proof on this issue). There are four eligibility

requirements under the FLSA: (1) "the cash wage paid such employee . . . shall be not less than"

the applicable tipped hourly rate ($2.13 under the FLSA and the full minimum wage minus $3.02

under the Florida Constitution); (2) the additional amount received in tips by the employee is

equal to the difference between the hourly rate paid and the full minimum wage; (3) the

employee "has been informed by the employer of the provisions of" section 203(m); and (4) "all

tips received by such employee have been retained by the employee, except that this subsection

shall not be construed to prohibit the pooling of tips among employees who customarily and

regularly receive tips." 29 U.S.C. § 203(m). An employer must satisfy **all** of the requirements of

section 203(m) to be entitled to the tip credit. If an employer does not satisfy all of the

requirements, then it cannot take the tip credit and must pay full minimum wage. See U.S. Dept.

of Labor Field Operations Handbook, sec. 30d01(b), Exhibit 16, ("Where an employer does not

strictly observe the provisions of Sec. 3(m), no tip credit may be claimed and the employees are

entitled to receive the full cash MW, in addition to any tips they may have received.").

Additionally, employers may not make deductions from employees' minimum wages

other than in very limited circumstances. One such circumstance relates to meal deductions and

provides that employers may seek a credit for the "reasonable cost" of providing "board, lodging, and other facilities" to employees toward their satisfaction of the minimum wage. 29 U.S.C. 203(m). The "reasonable cost" may never be "more than the actual cost to the employer" and shall not include "a profit to the employer or to any affiliated person" in providing board, lodging and other facilities. 29 C.F.R. § 531.3; Davis Bros., Inc. v. Donovan, 700 F.2d 1368, 1371 (11th Cir. 1983) ("The credit is not for the retail value of the meals, but is limited to the reasonable cost to the employer of providing the meals.").

Employers seeking a credit towards satisfaction of the minimum wage for "reasonable costs" for "board, lodging or other facilities" are required to keep records of costs incurred and the deductions taken from wages on a weekly basis in order to claim the credit. 29 C.F.R. §§ 516.27-28; see e.g., Donovan v. New Floridian Hotel, Inc., 676 F.2d 468, 473-474 (11th Cir. 1982) (finding "an employer's unsubstantiated estimate of his cost, where the employer has failed to comply with the recordkeeping provisions of the FLSA . . . does not satisfy the employer's burden of proving reasonable cost"); Strong v. Williams, No. 78-124, 1980 U.S. Dist. LEXIS 14185, *12 (M.D. Fla. Apr. 22, 1980) (holding that, because defendant failed to properly document the basis of the deduction, including "the date, purpose, and actual cost or reasonable cost of goods furnished for each pay deduction . . . they are unlawful they cannot be counted as wages paid to the [p]laintiff"); Hassinger v. Sun Way Enters., Case No. 6:12-cv-10520, 2014 U.S. Dist. LEXIS 73325, *31-35 (M.D. Fla. May 29, 2014) (collecting cases). Additionally, it is the employer's burden to establish that the amounts it has received from employees in meal payments have not exceeded its reasonable cost in providing those meals. Donovan, 676 F.2d at 473-74.

The United States Department of Labor has explained in its Field Operations Handbook and in opinion letters how the "reasonable cost" standard is to apply to meals provided in companies that are food service establishments (and would therefore incur different costs in providing employee meals than a non-food service employer that would have to set up a separate employee cafeteria).  See Report Prepared by Plaintiffs' expert, Brian Farrington, Mar. 10, 2016, attached as Exhibit 17.  Specifically, Department of Labor has stated:

> The "reasonable cost" of meals furnished by a food service establishment to its employees includes only the actual cost to the employer of the food, its preparation, and related supplies.  Salary or wage costs, as distinguished from material or supply costs, may be claimed only to the extent that such salary or wage costs are shown to be directly attributable to the cost of providing meals to the employees.  If food preparation/serving employees of a food service establishment would be paid the same rate of pay even if meals were not provided to the employees of the establishment, their wage costs cannot be included in determining reasonable cost. . .
>
> Costs which a food service employer incurs regardless of whether the employees were furnished meals may not be included in determining the "reasonable cost."  In a food service establishment, items such as employee insurance, payroll taxes, menus, decorations, other operating supplies, laundry, telephone, maintenance services, advertising and promotion, building and equipment rental, licenses and taxes, insurance and depreciation, franchise cost, and general administrative costs are a part of the overall cost of the operation of the employer's business establishment which may not be charged to the reasonable cost of employees' meals.

Field Operations Handbook, Section 30c06(a), Exhibit 18.  The Department of Labor has restated this standard and has further emphasized the limited nature of the costs attributable to employee meals at restaurants in opinion letters, explaining that, in a restaurant, "[o]nly any extra costs that are directly attributable to the cost of providing employees' meals . . . may be charged as a reasonable cost."  Dept. of Labor Op. Ltr., Sept. 8, 1997, 1997 WL 998034; see also Dept. of Labor Op. Ltr., May 27, 1975, 1975 DOLWH LEXIS 101.

### III.     PLAINTIFF'S CLAIMS

Plaintiff's First Amended Complaint contains one count on behalf of the class—a claim that Defendants' EDP violates the FMWA's requirements relating to the payment of wages to tipped employees.[12]  First Am. Compl. (ECF Docket No. 74) ¶¶ 64-67.  Plaintiff contends that Defendants have not satisfied the requirements of Section 203(m) for tipped employees who participate in the EDP and are therefore not permitted by the FWMA to take a tip credit from their wages.  Id. at ¶¶ 42-43, 49.  As this Court noted in its Order allowing Plaintiffs' motion to amend the complaint and denying Defendants' motion for judgment on the pleadings, Plaintiffs assert that "Defendants' [EDP] deduction violated the minimum wage provisions for 'tipped employees' because the deduction either: 1) caused the Plaintiffs' hourly cash wage to dip below the applicable reduced minimum wage rate due to 'tipped employees'; or 2) constituted an improper retention by Defendants of the Plaintiffs' tips."  Order (ECF Docket No. 70) at 2.  The Court further acknowledged in its Order denying Defendants' motion to dismiss Plaintiffs' amended complaint that Plaintiff's claim, which is "attributable to [Defendants] failure to effectively pay employees the appropriate minimum wage rate under the circumstances or the unlawful retention of tips . . . are linked to the same transaction or occurrence:  the deductions made for the employees' participation in Defendants' Employee Discount Program."  Order (ECF Docket No. 115) at 5.  *Inter alia*, Plaintiffs seek recovery of the difference between the hourly rate paid (after EDP payment) and the full minimum wage for all hours worked by members of the putative class and an equal amount in liquidated damages.  First Am. Compl.

---

[12]     Count II of the First Amended Complaint is a claim challenging the EDP under the federal Fair Labor Standards Act.  First Am. Compl. (ECF Docket No. 74) ¶¶ 68-70.  Plaintiffs do not seek class certification for this claim (for which collective action treatment is governed by the FLSA, 29 U.S.C. § 216(b), not Rule 23 of the Federal Rules of Civil Procedure).

(ECF Docket No. 74), at 20-21.  This claim is common to all tipped employees who participated in the EDF since December 14, 2009.

## ARGUMENT

## I.   CLASS CERTIFICATION STANDARD

Rule 23 of the Federal Rules of Civil Procedure establishes the standard for certifying a class action.  As a threshold matter, courts consider whether "the proposed class is adequately defined and clearly ascertainable."  Palm Beach Golf Ctr.-Boca, Inc. v. Sarris, 311 F.R.D. 688, 693 (S.D. Fla. 2015).

A class action must meet the four requirements of Rule 23 (a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).  "These requirements are referred to as numerosity, commonality, typicality, and adequacy."  Espinoza v. Galardi S. Enterprises, Inc., No. 14-21244-CIV, 2016 U.S. Dist. LEXIS 2904, at *2 (S.D. Fla. Jan. 11, 2016).

Class actions must also satisfy one of Rule 23(b)'s requirements.  Here, Plaintiffs have alleged a class under Rule 23(b)(3), which contains two requirements in addition to those in Rule 23(a).  First, the Court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  Second, the Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Id.

"[I]n deciding whether to certify the class, a court generally must take as true the allegations in the complaint, rather than determine the merits of the claim at the class-certification stage."  Butler-Jones v. Sterling Casino Lines, L.P., No. 6:08-CV-01186, 2008 U.S. Dist. LEXIS 102256, at *4 (M.D. Fla. Dec. 18, 2008).  More specifically, as the Supreme Court has recently explained, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1195 (2013) (citing Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2552 n.6 (2011)).

Notably, the Florida Legislature has explicitly recognized the propriety of classwide treatment of actions brought under the Florida Minimum Wage Act.  Section 24 of the Florida Constitution specifically provides, in the civil enforcement section that "[s]uch actions may be brought as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure."  Fla. Const. Art., § 24(e); see also Fla. Stat. § 448.110(9).  The Florida Legislature has described these provisions as "***authorizing*** class actions."  Dec. 5, 2005, Fla. Senate Journal, 2005 Spec. Sess. N, No. 1 (emphasis added).  The fact that the state wage law at issue explicitly authorizes Plaintiffs to sue on a classwide basis should inform this Court's analysis of the propriety of class treatment in this case.

## II.     THIS CASE MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION.

This case is particularly well-suited for class adjudication because it involves only one class claim, with **all** significant issues common to the proposed class, including, *inter alia*: the administration of the EDP; that tipped employees are paid an hourly rate less than the Florida minimum wage; employees' payment for the EDP out of their wages and/or tips; and whether or not the amounts that tipped employees have paid for the EDP exceed the reasonable costs to

Defendants for the meals.  All of the evidence relevant for determining liability is class-wide evidence—the employer's handbooks and policy documents; class members' payroll documents; documents showing the amounts tipped employees have paid over in tips to pay for the EDP; and a chart prepared by Defendants listing all class members and providing standardized information for each relating to EDP participation.  Further, all analyses performed by both Defendants' and Plaintiffs' expert witnesses regarding the central issue in the case—whether or not EDP payments by class members have exceeded the reasonable cost to Defendants for the program—are class-wide analyses that look at class data and evaluate the EDP's impact on the class as a whole.

Courts routinely grant class certification in cases brought by tipped employees relating to the minimum wage tip credit and improper distribution or retention of tips.[13]  Florida appellate courts have repeatedly recognized the propriety of certifying classes under Rule 1.220 when an employee challenges an allegedly unlawful wage (or other employment) practice.  See Morgan v. Coats, 33 So. 2d 59 (Fla. 2d DCA 2010) (reversing trial court's decision denying class certification in claim arising out of unpaid meal breaks; holding that class met all requirements for class certification under Rule 1.220 where "[t]he actual claims are based on the same legal theories and are based on the same course of conduct by the sheriff [as to all class members]"); Tampa Service Company, Inc. v. Hartigan, 966 So. 2d 465 (Fla. 4th DCA 2007) (affirming certification of class in case challenging defendant's practice of charging workers more than prevailing rate for public transportation to and from hiring hall and work sites); Deininger v.

---

[13]     See, e.g., Matamoros v. Starbucks Corp., 699 F.3d 129 (1st Cir. 2012) (affirming certification of class under Massachusetts wage laws relating to improper tip distribution); Shahriar v. Smith & Wollensky Restaurant Group, Inc., 659 F.3d 234 (2d Cir. 2011) (affirming certification of class in case under New York state wage laws relating to improper tip distribution and tip credit invalidation); Alonso v. Uncle Jack's Steakhouse, Inc., 08-Civ-7813, 2011 U.S. Dist. LEXIS 106356 (S.D.N.Y. Sept. 21, 2011) (certifying class in case relating to improper tip distribution and tip credit invalidation); Williams-Green v. J. Alexander's Restaurants, Inc., 277 F.R.D. 374 (N.D. Ill. 2011) (same, under Illinois wage laws); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193 (S.D.N.Y. 2011) (same; New York law).

Palm Beach County, Florida, 922 So. 2d 1102 (Fla. 4th DCA 2006) (reversing denial of class certification in case challenging defendant's use of secret meetings to demote or terminate employees in violation of Sunshine Act").

Turning to the facts of this case, Plaintiffs easily satisfy the requirements of Rule 23 for certification of a class action.

### A.      The Class Is Adequately Defined And Clearly Ascertainable.

"'An identifiable class exists if its members can be ascertained by reference to objective criteria. The analysis of the objective criteria also should be administratively feasible. Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry.'"  Palm Beach Golf Ctr., 311 F.R.D. at 693 (quoting Bussey v. Macon Cnty. Greyhound Park, Inc., 562 Fed. Appx. 782, 787–88 (11th Cir. 2014)).  Here, there can be no question that this standard is met.  Class members are all employees of Defendants who may be identified based on the following objective criteria:  (1) employment at a Chart House and/or Landry's Seafood House restaurant in Florida at any time since December 14, 2009; (2) working as a tipped employee, *i.e.*, an employee who is paid an hourly rate that is lower than the full Florida minimum wage and receives tips as part of his or her income; and (3) participation in the EDP for at least some of his or her employment.  Here, the class is easily ascertained and Defendants have done so for all class members during the period December 11, 2009 through November 9, 2015 by identifying number by providing information about each class member relevant to their claims in the case.[14]

This establishes that the class here is adequately defined and clearly ascertainable.

---

[14]      See THIRD REVISED Putative Class Member List (Exh. 12). During the Motion to Compel hearing on May 19, 2016, Defendants' counsel agreed to supplement their production, which should include an update to their THIRD REVISED Putative Class Member List.

**B.**     **Rule 23(a) Of The Federal Rules Of Civil Procedure Is Satisfied.**

**1.**     **The Class Is Sufficiently Numerous**.

There can be no question that the numerosity requirement is met in this case.  The numerosity requirement "imposes a 'generally low hurdle' and a plaintiff need not show the precise number of members of the class."  Palm Beach Golf Ctr., 311 F.R.D. at 695.  The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.'"  Manno v. Healthcare Revenue Recovery Grp., LLC, 289 F.R.D. 674, 684 (S.D.Fla.2013) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.1986)).  Evidence produced by Defendant establishes definitively that, during the time period relevant to this case (beginning on December 14, 2009), more than 2,013 individuals have been employed as tipped employees who participated in the EDP at the eleven restaurants at issue.  See Defs.' THIRD REVISED Putative Class Member List, Exh. 12.  This number is well above the threshold in this Circuit for numerosity.

With such a large class moreover, joinder is patently impracticable.  This is particularly so for the following additional reasons:  the case involves restaurants located in multiple different locations in Florida, and the class members likely reside all over the state; the case spans a total of approximately seven years, increasing the likelihood that some class members may have moved even farther afield since working for Defendants; and many class members may have worked for Defendants and/or have participated in the EDP for only a short time and be entitled to a small recovery.  See, e.g., Sosa v. Safeway Premium Finance Co., 73 So. 2d 91, 114 (2011) (Florida class certification rule's numerosity requirement satisfied with "a projected

14

class of at least several hundred, if not thousands, of aggrieved class members" and where there was a broad "geographical and chronological span of the class").

Accordingly, the class clearly satisfies the numerosity requirement.

## 2.    There Are Sufficient Common Issues.

Commonality requires the identification of an issue that by its nature "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  Commonality is a "relatively light burden." County of Monroe, Fla. v. Priceline.com, Inc., 265 F.R.D. 659, 667 (S.D. Fla. 2010) (internal quotation marks omitted).  The commonality requirement "does not require that all the questions or law and fact raised by the dispute be common." Id.  Commonality is satisfied if the case "involve[s] issues that are susceptible to class wide proof.'" Garcia-Celestino v. Ruiz Harvesting, Inc., 280 F.R.D. 640, 646 (M.D. Fla. 2012) (internal quotation marks omitted).  "Generally, the commonality requirement is met if the allegations involve a common course of conduct by the defendant." Palm Beach Golf Ctr., 311 F.R.D. at 695.

Here, the common factual and legal issues are legion.   Broadly, the case challenges a program that Defendants have implemented at all of their restaurants pursuant to centralized, common policies and procedures.  Specific to this case, moreover, each and every disputed factual and legal issue, listed below, is a common question to the class that can be resolved through common answers.  For example, the following questions are common to the class:

a)  During the applicable time period, have tipped employees at Chart House and Landry's Seafood House restaurants in Florida been paid an hourly rate that was lower than the full Florida Minimum Wage?

b)  During the applicable time period, has the EDP been in effect at Chart House and Landry's Seafood House restaurants in Florida?

c) During the applicable time period, have Defendants made deductions from tipped employees' wages and/or tips for participation in the EDP?

d) Can Defendants meet their burden as to whether the amounts Defendants have received from tipped employees for the EDP exceeded the reasonable costs to Defendants from the program?

e) What type of damages (including liquidated damages), if any, are the Plaintiffs and the putative class members entitled to recover under the Florida minimum wage law?

f) Is Defendants' violation of the Florida minimum wage law willful, such that the five-year statute of limitations should apply?

Every one of these questions can be resolved through common proof, *e.g.*, class members' payroll records, documents showing payment of EDP costs through tips, Defendants' policy documents relating to the EDP, Defendants' class member chart, and Defendants' and Plaintiffs' expert reports.

Indeed, the expert reports submitted by both parties demonstrate clearly that commonality is satisfied in this case. As discussed at 5-7, *supra*, it is Defendants' burden to establish that they have complied with all of the provisions of Section 203(m). Donovan, 676 F.2d at 473-474. Defendants have attempted to satisfy that burden through their submission of an expert report by Steven Oscher which purports to analyze the costs to Defendants of providing tipped employees with meals as compared with the amounts paid by tipped employees for participation in the EDP. See Updated Oscher Report, Exh. 14. Plaintiffs dispute Defendants' expert's analysis and have submitted two rebuttal expert reports. First, Plaintiffs' expert witness Stephen LeBruto has separately analyzed the data regarding payments and costs relating to the EDP and has concluded that the amounts received by Defendants exceed their reasonable costs relating to the EDP. See LeBruto Report, Exh. 15. Second, Brian Farrington, Plaintiffs' expert witness regarding the United States Department of Labor's standard for analyzing reasonable costs in the restaurant

industry, testified that Defendants' expert witness's analysis of reasonable costs did not apply and was inconsistent with the analysis that the DOL would apply.  See Farrington Report, Exh. 17.  Plaintiffs assert that these expert reports establish that Defendants cannot meet their burden of establishing that the payments made by the putative class members for participation in the EDP do not exceed Defendants' reasonable costs incurred in providing the meals.

However, regardless of whether or not Defendants can meet their burden on this issue (a merits decision that the Court should not make on a motion for class certification),[15] what is relevant for class certification is that the issue is a common one.  When Defendants' liability is determined, Defendants will either be liable to the entire class or have no liability to any class member.  The data that the expert witnesses reviewed consisted of yearly income statements for the restaurants at issue and data showing the amounts paid by class members for EDP participation.  Either Defendants can meet their burden of showing that the reasonable costs of the EDP did not exceed the amounts deducted from class members' wages and/or tips, or they cannot.  All of the relevant evidence on this point is common to the class, and all of the experts performed their analyses on a classwide basis.  As such, there can be no question that this central issue may be resolved "in one stroke."  See Dukes, 131 S. Ct. at 2551.

Commonality is therefore satisfied in this case.

### 3.    The Named Plaintiff's And Class Members' Claims Are Typical.

In order to satisfy the typicality requirement, a class representative must "possess[] the same interest and suffer the same injury" as the other class members.  Lebron v. Wilkins, 277 F.R.D. 664, 668 (M.D. Fla. 2011).  "The focus of typicality is whether the class representative's interest is aligned enough with the proposed class members to stand in their shoes for purposes

---

[15]    "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, Inc., 133 S. Ct. at 1194-1195.

of the litigation and bind them in a judgment on the merits." <u>Colomar v. Mercy Hosp., Inc.</u>, 242 F.R.D. 671, 677 (S.D.Fla.2007).  The claims "need not be identical"; there must be a "sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification." <u>Ault v. Walt Disney World Co.</u>, 692 F.3d 1212, 1216 (11th Cir. 2012).

Named Plaintiff Jonathan Blocher easily satisfies the typicality requirement.  He worked as tipped employee at Defendants' Chart House restaurant in Florida during the applicable time period; he was paid the tipped minimum wage; he participated in the EDP; and he had deductions taken from his wages and/or tips for the EDP.  <u>See</u> First Am. Compl. ¶¶ 13-24. Plaintiff Blocher had EDP deductions taken from his paychecks, including both paychecks that included only hourly wages and paychecks that included commingled hourly wages and tip income.  Blocher payroll records, CHLN 393-394, attached as Exhibit 19.  The claims of the named plaintiff are identical to the claims that he is pursuing on behalf of the class (i.e., that Defendants failed to comply with Section 203(m) and must pay class members the full minimum wage because of their practice of deducting minimum wages or tips from their sub-minimum wage employees for payment of the EDP); indeed, there are no factual differences.

Thus, the typicality requirement is met in this case.

### 4.      The Named Plaintiff And Class Counsel Will Adequately Represent The Interests Of The Class.

"The Court undertakes two separate inquiries to determine the adequacy of the class representative.  First, the Court examines whether any substantial conflicts of interest exist between the representative and the class.  Second, the Court asks whether the representative will adequately prosecute the action." <u>Palm Beach Golf Ctr.</u>, 311 F.R.D. at 696.

Plaintiff Blocher and his counsel satisfy the adequacy requirement.  Plaintiff is pursuing

the same claims for himself as he seeks to pursue for class members.  He has no conflict with the

class and is willing and able to take an active role as class representative and advocate on behalf

of all class members.  Also, proposed class counsel, Sam J. Smith, Esq., Loren Donnell, Esq.,

and Tamra Givens, Esq. of Burr & Smith, LLP[16] and Hillary Schwab, Esq. of Fair Work, P.C.[17]

are all experienced in litigating wage claims on behalf of plaintiff classes and have collectively

done so in over 40 notable class and collective actions around the country.  They have zealously

prosecuted the action on behalf of the class thus far and will continue to do so.  Accordingly, the

adequacy of representation requirement is satisfied.

**C.    Rule 23(b)(3) Of The Federal Rules Of Civil Procedure Is Satisfied.**

**1.    Common Factual And Legal Questions Predominate.**

Plaintiffs' claims also satisfy the requirement of predominance.  Predominance requires

not only that a common question of fact and/or law exists, but that the common questions

predominate over class members' individual ones.  "Common issues of fact and law predominate

if they have a direct impact on every class member's effort to establish liability and on every

---

[16]     Sam J. Smith has practiced law for almost twenty-seven years in Florida and has been a partner at Burr & Smith for eighteen years.  He has been named by Best Lawyers 2012 Tampa Employment Law – Individuals "Lawyer of the Year," AV-rated, and was senior editor and contributing author of The Fair Labor Standards Act for over ten years.  Loren B. Donnell has practiced labor and employment law representing plaintiffs in class and collective employment actions exclusively for over ten years.  She is a past President of the Florida Chapter of the National Employment Lawyers Association and has been an editor or contributing author for wage and hour treatises, including, The Fair Labor Standards Act and Wage and Hour Laws: A State-by-by Survey.  Tamra Givens has represented plaintiffs in class litigation, including employment cases, for over twelve years.  Recently, she served as class counsel in Dyer et al. v. Wells Fargo Bank, N.A., No. C 13-2858 (N.D. Cal.), in which she helped recover unpaid commissions for a nationwide class of home mortgage employees, and in Prior et al. v. Ark Rustic Inn, LLC, et al., No. 14-006752 (Fla. 9th Judicial Cir.), a case challenging the legality of a restaurant's tip-out practices under the FMWA.

[17]     Hillary Schwab, Esq. has been litigating wage and hour class actions for over ten years, with a focus in class litigation on behalf of tipped employees.  She has represented workers in class action cases under the minimum wage and tips laws of Massachusetts, Florida, and Pennsylvania, as well as the FLSA.  She has been counsel on numerous cases certified as class actions.  See, e.g., Overka v. American Airlines, Inc., 265 F.R.D. 14, 19 (D. Mass. 2010) (certifying nationwide class of American Airlines skycaps and appointing Attorney Schwab and her law partner as class counsel).

class member's entitlement to relief."  Schojan v. Papa Johns Intern., Inc., 303 F.R.D. 659, 668 (M.D. Fla. 2014) (internal quotation marks omitted).  Courts look at the extent to which "individualized proof" and/or "individualized legal points" will be necessary for Plaintiffs to prove their case.  Williams v. Mohawk Industries, Inc., 568 F.3d 1350, 1357 (11th Cir. 2009) (internal quotation marks omitted).

Here, the Defendants have administered the EDP uniformly as to the Plaintiffs and all class members.  See supra, p. 2-3.  All tipped employees who enroll in the EDP have deductions taken from their wages and/or tips.  Id.  Moreover, the analysis of whether or not the amounts paid to Defendants by tipped employees for the EDP exceed the reasonable costs to Defendants for the meals consumed is a classwide analysis that is the same for all class members (and has been performed on a classwide basis by both Defendants' and Plaintiffs' expert witnesses).  Id. at 5, 16-17.  In fact, there are no individual questions in this case that are material.  Here, there is no question that liability can be determined through resolution of the common questions, as discussed in Section II.B.2, supra, making the common questions predominate.

Notably, in this case, while the precise amount owing to each class member will vary, the formula for calculating damages is the same for every class member and can be applied by extracting the same information from every class member's payroll data (specifically, hourly rates, hours worked, and whether the EDP payments were made from wages, commingled wages and tips, or "paid-in" tips).  Moreover, even if some individualized inquiry were necessary as to damages, the United States Supreme Court has recently held that that would not impact the predominance inquiry.  In a case decided approximately two months ago relating to class certification of a claim under the Iowa wage laws, the Court held:  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action

20

may be considered proper under Rule 23 (b)(3) *even though other important matters will have to be tried separately, such as damages* or some affirmative defenses peculiar to some individual class members.'" Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

Because all the common factual and legal issues needed to resolve liability in this case may be determined through generalized proof and objective analysis with a simple formula to calculate damages, the common questions in this case predominate.

## 2.    The Class Action Mechanism Is Superior.

Finally, the proposed class satisfies the superiority requirement. "The focus of the superiority analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" Palm Beach Golf Ctr., 311 F.R.D. at 699 (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir.2004)). In analyzing this requirement, courts often look at the size of the class, the similarity of the claims, and the size of the potential recovery for individual class members. See Palm Beach Golf Ctr., 311 F.R.D. at 699 ("Given the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions ($500 in the absence of a finding of willfulness) and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution.").

Notably, courts in other minimum wage cases on behalf of tipped employees have routinely found the superiority requirement to be satisfied. In Schmidt v. Smith & Wollensky, LLC, in which the plaintiffs asserted that the employer failed to pay the proper tipped overtime

rate to tipped employees, the court held:  "this case presents issues that are shared by members of the proposed classes.  Class certification is more efficient than individual suits to deal with these common questions."  268 F.R.D. 323, 330 (N.D. Ill. 2010).  Similarly, in <u>Whitehorn</u>, the court noted:  "Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant."  275 F.R.D. at 200.  In <u>Driver v. AppleIllinois, LLC</u>, in which the plaintiffs asserted that the defendant had not satisfied all requirements to pay the tipped minimum wage, the court held:  "Adjudicating this issue on a class basis 'would achieve economies of time, effort, and expense, and promote . . . uniformity of decision' as to all servers participating in the pool, the goals of Rule 23."  265 F.R.D. 293, 307 (N.D. Ill. 2010).

For similar reasons as those noted in these other tipped minimum wage cases, the superiority requirement is met here.  There are more than 2,013 potential class members.  If Plaintiffs prevail, each of these individuals would be entitled to recover damages under the Florida minimum wage law.  For many class members, these claims will be small in relation to the costs and expenses of litigating these claims, making them not economically viable to be pursued individually because the small recoveries simply would not justify the expense.[18]

---

[18]     The fact that this case is an employment case, involving many class members who are likely still current employees of Defendants, is a further reason that class certification is superior.  Indeed, courts routinely recognize the superiority of class certification in the employment context, where there is a concern that current employees would be reluctant to step forward and assert claims individually because of fear of potential retaliation by the employer.  <u>See, e.g.</u>, <u>Overka et al. v. American Airlines, Inc.</u>, 265 F.R.D. 14, 24 (D. Mass. 2010) (noting with approval Plaintiffs' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis"); <u>see also</u> <u>Perez v. Safety-Kleen Systems, Inc.</u>, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, <i>inter alia</i>, "some class members may fear reprisal"); <u>Guzman v. VLM, Inc.</u>, Case No. 07-cv-1126, 2008 U.S. Dist. LEXIS 15821, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation").

It is also notable for the superiority analysis that the Florida Constitution recognizes the propriety of Florida minimum wage claims being tried on a class basis.  Specifically, the Florida Constitution's provision establishing the minimum wage states in its Enforcement section that "[s]uch actions may be brought as a class action."  Fla. Const., Art. X, § 24 (e); see also Fla. Staff Analysis, S.B. 18, Dec. 6, 2005 (Subsection 24(e), Art. X of the State Constitution permits class actions to enforce this provision").  The Florida Legislature's enactment of the minimum wage statute (reflecting the constitutional amendment) also states that Florida minimum wage actions may be brought as class actions.  Fla. Stat. § 448.110(9).[19]  This provision constitutes an acknowledgement that class actions are a superior form of bringing claims under the Florida minimum wage laws.

Moreover, for all of the reasons set forth above, class litigation is eminently manageable in this case.  The case concerns one class claim only and challenges one uniform policy; Defendants bear the burden of proving their eligibility for the tip credit and the propriety of the EDP as a meal deduction, a burden it would hold as to the claims of all class members; and the issues in the case are straightforward and common to the class.  It would be a waste of judicial resources for individual actions to proceed separately litigating these identical issues. Accordingly, the class mechanism is superior.

## III.    THE COURT SHOULD DIRECT A CLEAR AND CONCISE NOTICE.

Pursuant to Rule 23 (b)(3), notice must be issued to the class if the Court grants Plaintiff's motion for class certification.  The rule requires that the Court "direct to class

---

[19]    The statutory provision states in full:  "Actions brought pursuant to this section may be brought as a class action pursuant to Rule 1.220, Florida Rules of Civil Procedure.  In any class action brought pursuant to this section, the plaintiffs shall prove, by a preponderance of the evidence, the individual identity of each class member and the individual damages of each class member."  Fla. Stat. § 448.110(9).  As discussed in Section I.A, supra, the identity of each class member in this case may be determined based on Defendants' THIRD REVISED Putative Class Member List, Exh. 12, as supplemented for class members working subsequently to the preparation of this list, and the damages may be determined by a formula, using payroll information provided by Defendants.

members the best notice that is practicable under the circumstances . . . ."[20]  The notice must

provide the class members with "information reasonably necessary to make a decision whether

to remain a class member and be bound by the final judgment or opt out of the action." Faught v.

Am. Home Shield Corp., 668 F.3d 1233, 1239 (11th Cir. 2011) (quoting In re Nissan Motor

Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977)).  It does not need to state "every

material fact" or be "overly detailed."  Id.; see Roundtree v. Bush Ross, P.A., No. 8:14-cv-357,

2015 U.S. Dist. LEXIS 128404, *2-4 (M.D. Fla. Sept. 17, 2015).  To satisfy due process

requirements, the notice must be the "best practicable, 'reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections.'"  Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811-12

(1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).

Because the class consists of minimum wage restaurant workers, a segment of the

population that tends to move residences often, Plaintiffs contend that the "best practicable"

notice is by mail, email, website posting, and onsite posting or letter distribution for current

employees at Defendants' Chart House and Seafood House restaurants in Florida.  See Morgan

v. Public Storage, No. 14-cv-21559, 2016 U.S. Dist. LEXIS 54937, *55 (S.D. Fla. Mar. 9, 2016)

(finding notice by mail, email if known, notice publication, telephone hot-line, and website

satisfied best practicable notice requirements under Rule 23); Vines v. Covelli Enters., No. 12-

0028, 2012 U.S. Dist. LEXIS 170870, *19 (W.D. Pa. Nov. 30, 2012) (directing notice to current

employees through a direct mail or letter attached to their bi-weekly paystub).

---

[20]      The content of the notice shall "clearly and concisely state in plain, easily understood language: (i) the
nature of the action; (ii) the definition of the class certified;(iii) the class claims, issues, or defenses; (iv) that a class
member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from
the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the
binding effect of a class judgment on members under Rule 23 (c)(3)."  Rule 23, Fed. R. Civ. P.

Plaintiff seeks a simple notice that tracks the requirements of Rule 23.[21]  Plaintiff's proposed notice is attached as Exhibit 20.

## CONCLUSION

This case satisfies all of the requirements in Rule 23 for class certification.  Accordingly, Plaintiffs respectfully request that the Court:

1.       Certify the following class:

All individuals who worked at Chart House and/or Landry's Seafood House restaurants in Florida at any time during the Relevant Class Liability Period [beginning December 14, 2009] for whom Defendants claimed a tip credit to meet Defendants' minimum wage obligations under Article X, Section 24 of the Florida Constitution and who participated in Defendants' Employee Discount Program.

2.       Direct Defendants to produce within 20 days of this Court's order certifying the class the names, last known addresses, telephone numbers, email addresses, employee identification number, and social security numbers for class members and to authorize that notice of this case and class members' rights pursuant to this action be sent to them in the form attached as Exhibit 20 by mail, email, website, and store memo or posting for current employees.

3.       Appoint Named Plaintiff Jonathan Blocher to be the class representative and the law firms of Burr & Smith, LLP and Fair Work, P.C. to be class counsel.

---

[21]      Plaintiffs ask that the Court reject any efforts by the Defendants interject into the notice language relating to trial obligations and threat of costs, as courts regularly reject attempts to include such language because of its *in terrorem* effect on absent class members.  See e.g., Diaz v. S&H Bondi's Dept. Store, Inc., No. 10 Civ. 7676, 2012 U.S. Dist. LEXIS 5683 at *21-22 (S.D.N.Y. Jan. 18, 2012) (refusing to include potential discovery obligations or risk of costs in notice for this reason); see also Garcia v. Elite Labor Serv., No. 95C2341, 1996 U.S. Dist. LEXIS 9824, *13-14 (N.D. Ill. July 11, 1996) (finding such language could be intimidating and inappropriate because the class could exceed 1,000 individuals and thus unlikely that most members would be required to testify in court in any event).

Dated: May 23, 2016                    Respectfully submitted,

                                       /s/ Sam J. Smith
                                       Sam J. Smith
                                       Florida Bar No. 818593
                                       Loren B. Donnell
                                       Florida Bar No. 0013429
                                       Tamra Givens
                                       Florida Bar No. 657638
                                       BURR & SMITH, LLP
                                       111 2nd Avenue N.E., Suite 1100
                                       St. Petersburg, FL 33701
                                       (813) 253-2010
                                       ssmith@burrandsmithlaw.com
                                       ldonnell@burrandsmithlaw.com
                                       tgivens@burrandsmithlaw.com

                                       Hillary Schwab
                                       Mass. BBO# 666029
                                       FAIR WORK, P.C.
                                       192 South Street, Suite 450
                                       Boston, MA 02111
                                       (617) 607-3261
                                       hillary@fairworklaw.com

                                       Counsel for the Plaintiffs


## CERTIFICATE OF SERVICE

I hereby certify on May 23, 2016, I electronically filed the foregoing Motion with the

Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all

counsel of record.


                                       /s/ Sam J. Smith
                                       Sam Smith