## UNITED STATES DISTRICT COURT FOR
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| JONATHAN BLOCHER and JOSEPH LEVI, on behalf of themselves and others similarly situated, ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Civil Action No. 8:14-cv-3213-MSS-JSS |
| LANDRY'S INC., and CHLN, INC., ) ) | |
| Defendants. ) ) | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PETITION FOR APPROVAL OF REASONABLE ATTORNEYS' FEES, COSTS, AND LITIGATION EXPENSES AND MEMORANDUM OF LAW IN SUPPORT THEREOF

## I.    INTRODUCTION

In anticipation of the final settlement approval hearing scheduled to take place on Friday, May 29, 2019, at 2:00 p.m., Plaintiffs Jonathan Blocher and Joseph Levi ("Plaintiffs"), individually and on behalf of the certified class, request final approval of Plaintiffs' and Defendants' Landry's, Inc. and CHLN, Inc. ("Defendants") (collectively with Plaintiffs, the "Parties") proposed class action Settlement Agreement, attached as Exhibit 1 to the Declaration of Hillary Schwab filed contemporaneously herewith ("Schwab Decl."). Notice has been given to the class members, and the period for class members to opt out of the litigation or object to the settlement has closed. No class member has filed an objection to the settlement, and only one class member has opted out of the settlement.[1] Nothing has changed since the Court's preliminary approval, and it is now

---

[1]    Plaintiffs had sent notice to the class one time previously, after class certification but before the proposed settlement, at which time seven class members opted out. *See* Dkt. No. 278. As part of the settlement notice process,

appropriate for the Court to determine as a final matter that the Settlement reached by the parties is fair, reasonable, and adequate.

## II.   BACKGROUND OF THE CASE

This case was originally filed on December 29, 2014.  Plaintiffs alleged, and Defendants deny, that Defendants' practice of charging tipped employees for participation in the Landry's Employee Discount Program ("EDP") violates the Florida Constitution's minimum wage provision.

The Court certified the following class on January 30, 2017:

> All individuals who worked at Chart House and/or Landry's Seafood House restaurants in Florida at any time during the Relevant Class Liability Period [beginning December 14, 2009 and ending on June 19, 2017] for whom Defendants claimed a tip credit to meet Defendants' minimum wage obligations under Article X, Section 24 of the Florida Constitution and who participated in Defendants' Employee Discount Program.

Dkt. No. 237 at 20; Schwab Decl. ¶ 9.

This case has been litigated heavily over more than four years, with numerous substantive motions having been filed and decided by the Court.  The parties have also completed discovery in this matter, with Plaintiffs having taken five depositions of defense witnesses and Defendants having taken five depositions of Plaintiffs' witnesses.  Each party has also retained expert witnesses, who have generated expert witness reports and have been deposed by opposing counsel. There has been significant discovery motion practice, and Defendants have turned over more than 25,000 of pages of documents in discovery.  *See* Schwab Decl. ¶ 11.

In August 2018, the Court decided several pending motions, and further ordered the parties to submit to mediation with mediator Marlene Quintana, Esq., on or before September 21, 2018.

---

one of the original opt-outs has requested that he be able to participate in the settlement, and the parties agreed. Accordingly, the total number of class members who have opted out is seven.

The Court also set a trial schedule for this action and set the trial in this matter to take place in October 2018.  Dkt. Nos. 356-58.

The Parties attended and participated in the Court-ordered mediation with Marlene Quintana on September 20, 2018.  Prior to mediation on September 20, 2018, the Parties had previously unsuccessfully attempted to resolve the matter through mediation on two occasions, in March 2016 with mediator Hunter Hughes, Esq. and in November 2016 with mediator Christina Ramirez, Esq.  On September 20, 2018, after four years of litigation and a full day of mediation, the Parties reached an agreement on the material terms of a proposed settlement of this matter on behalf of the class.  Over the next several months, the Parties continued to negotiate, draft, and ultimately sign a Settlement Agreement.  *See* Schwab Decl. ¶ 12; Exhibit 1.

On January 29, 2019, the Court granted preliminary approval of the settlement, specifically:  (1) preliminarily approving of the Parties' settlement; (2) authorizing of the settlement notice to the class; and (3) setting a final approval hearing for May 29, 2019, at 2:00 p.m.  Dkt. No. 386.

The Parties' proposed Settlement reflected in the Settlement Agreement is intended to resolve the wage claims of Named Plaintiffs and all individuals in the class originally certified by the Court and to whom notice has been sent.  As explained in more detail below, the Named Plaintiffs and Class Counsel believe the Settlement Agreement is fair, adequate and reasonable in light of all the risks involved in continued litigation.

III.    <u>SUMMARY OF SETTLEMENT TERMS</u>

Subject to the Court's approval and in exchange for the release of claims, the Settlement Agreement provides that Defendants will pay the following amounts: up to $1,100,000 to class members; up to $1,100,000 in dining cards to be used at Landry's restaurants; up to $30,000 in

service payments to the two Named Plaintiffs ($15,000 each); up to $1,400,000 in attorneys' fees; and up to $100,000 in litigation costs and expenses, including the costs of settlement administration.  Schwab Decl. Ex. 1 at II.B.1.  Individual Plaintiff and class member settlement amounts were calculated by Class Counsel proportional to the amounts paid by class members in EDP during the relevant time period.  Schwab Decl. ¶ 14.  The Parties have agreed that class members had a sixty-day period from when class notice was mailed to submit claim forms, opt out of the settlement, or object to the settlement and that all class members who submit valid and timely claim forms will be entitled to receive a share from the settlement (including a monetary payment and dining cards).  Schwab Decl. Ex. 1 at II.A.3.  Additionally, any class member who submits a claim form after the claim deadline but within nine months of the initial mailing of the class notice shall be eligible to receive their share of the dining cards.  *Id.*, II.A.4.

Defendants have also agreed to general releases of claims against Plaintiffs Blocher and Levi.  *Id.*, II.J.3.  Finally, as part of the settlement and upon final approval by the Court, Defendants have agreed to dismissal of their counterclaims with prejudice.  *Id.*, II.J.4.

Pursuant to the Settlement Agreement, the settlement payments shall be paid out and dining cards disseminated approximately forty-five days after the date on which the Court's approval of the settlement becomes a final non-appealable order.  *Id.*, I.A.3, II.D.

In exchange for these settlement payments and as expressly set forth in the Settlement Agreement and in the notice to members of the class, Plaintiffs and all members of the class who did not opt out of the settlement shall release all claims that were or could have been alleged in this lawsuit, including such claims relating to state or federal wage and hour claims, for unpaid wages, minimum wage, overtime, and the application, administration or violation of the tip credit. Schwab Decl. Ex. 1 at II.J.1.

## IV.   COURTS APPROVE CLASS SETTLEMENTS UPON A SHOWING THAT SUCH SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE.

The determination of whether a proposed settlement is fair and reasonable pursuant to Rule 23(e) of the Federal Rules of Civil Procedure involves "a two-step process that includes (1) preliminary approval and (2) a subsequent fairness hearing." *O'Connor v. Worthington PJ, Inc.*, No. 216CV608FTM99MRM, 2017 WL 6762436, at *3 (M.D. Fla. Dec. 13, 2017), *report and recommendation adopted,* No. 216CV608FTM38MRM, 2018 WL 264382 (M.D. Fla. Jan. 2, 2018) (citing *Holman v. Student Loan Xpress, Inc.*, No. 8:08–cv–305–T23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009)).   Once the Court grants preliminary approval and notice is provided, the Court conducts a "fairness hearing," at which class members are afforded an opportunity to be heard. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).   At such a hearing, the Court conducts a substantive evaluation of the proposed settlement to determine whether it is fundamentally fair, adequate, and reasonable. *In re Mid-Atlantic Toyota*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *Horton*, 855 F. Supp. at 827; *In Re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993).   In making this determination, courts are to consider the general policy that "[p]articularly in class action suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Domestic Air Transportation Antitrust Litig.*, 148 F.R.D. 297, 305 (N.D. Ga. 1993).

"[A] strong initial presumption of fairness attaches to any class action settlement reached by experienced counsel following arms-length negotiations." *In re United States Sugar Corp. Litig.*, No. 08-80101-CIV, 2011 WL 13173854, at *2 (S.D. Fla. Jan. 24, 2011).   Moreover, in determining whether a settlement was negotiated at arms-length, courts tend to look at whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Diaz v. Hillsborough County Hospital Authority*, No. 8:90-CV-120-

T-25B, 2000 WL 1682918, at \*6 (M.D. Fla. Aug. 7, 2000). "In the 'absence of fraud, collusion or the like,' the Court is 'entitled to rely upon the judgment of experienced counsel for the parties' and 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* at \*4 *quoting Cotton*, 559 F.2d at 1330.

The settlement enjoys a presumption of fairness because the proposed Settlement adequately addresses Plaintiffs' minimum wage claims, falls within the range of fairness for final approval, and was negotiated by lawyers experienced in complex wage and hour litigation with the assistance of an experienced class action mediator during a full-day mediation session.

A.   Notice to Class Members Was Fair, Reasonable, and Adequate.

After this Court preliminarily approved the Settlement and pursuant to the Settlement Agreement, the Court-approved Class Action Settlement Notice was mailed to the 2,393 members of the certified settlement class on February 28, 2019. Declaration of Jennifer Keough, filed herewith, ¶¶ 4-5. The notice informed class members about the nature of the case, the terms of the settlement, and set a deadline of April 29, 2019 (sixty days after notice was mailed) for class members to submit a claim form, opt out of the case, or object to the settlement. Keough Decl., Exhibit A. The notice also informed class members that they had until November 29, 2019 to submit a claim form to receive their dining cards portion of the settlement. *Id*. The settlement claims administrator in this case, JND Legal Administration Co., mailed the approved class notice to a total of 2,393 addresses. Keough Decl. ¶ 5. During the notice period, JND received 398 Notices returned as undeliverable, seven of which contained a forwarding address, to which the Notice was sent. Keough Decl. ¶ 6. JND performed address research on the remaining undeliverable Notices and re-mailed to the 326 Class Members for whom updated addresses were

found.  *Id*.  Of the class notices that were returned as undeliverable, the settlement claims administrator was able to locate new addresses for all but 64 class members.

The Claims Administrator has received no objections to the settlement, and only one class member has requested to be excluded from the settlement during the notice period, for a total of seven opt-outs.  Keough Decl. ¶¶ 11-14, Exhibit B; Schwab Decl. ¶ 17.

The method of notice in this case (which was preliminarily approved by this Court) satisfies the standard established by the United States Supreme Court for disseminating notice to class members, namely it is "the best notice that is practicable under the circumstances." *Brown v. Colegio de Abogados de Puerto Rico*, 2011 WL 721910, at *1 (D.P.R. Feb. 28, 2011) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950)).  As one court has noted, "'[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.'" *Serio v. Wachovia Securities, LLC*, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting *In re Merrill Lynch TYCO Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008)); *see also In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("imposing a requirement of actual notice to every class member would place an impossible constraint on . . . class action litigation").

In the federal context, courts routinely recognize that notice by mail satisfies the requirements of Rule 23 regarding notice. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances"); *Parks v. Portnoff Law Assocs.*, 243 F. Supp. 2d 244, 250 (E.D. Pa. 2003) (notices mailed to class members' last known addresses held reasonable and adequate).  Moreover, the low undeliverable rate here—less than

3% of the total class—is well within the range that courts have found to be acceptable. *See, e.g., In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) (notice held reasonable and adequate even though 1,455 out of 6,423 claim forms were "not actually received"); *Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975) (approving notice where 33% of class members not reached by mailing).

B.      The Settlement Agreement Was Reached By Arms-Length Negotiations.

Here, the parties reached the resolution set forth in the Settlement Agreement following four years of litigation, hundreds of hours of data analysis, and three full-day mediations with the aid of experienced complex and class litigation mediators.   Schwab Decl. ¶ 13.  The case has almost four hundred docket entries, including three motions for summary judgment and a motion for class certification, as well as numerous other substantive motions.  *Id.*  A total of thirteen depositions were conducted by the parties, more than five discovery motions were filed, briefed, and decided, and Defendants produced over 25,000 pages of documents in discovery.  These documents included all payroll records for class members and other documents from which Plaintiffs could calculate damages.  *Id.*  Class Counsel have spent hundreds of hours reviewing these documents and calculating damages for class members.  *Id.*  Additionally, the parties have spent significant time preparing for trial, including retaining a total of three expert witnesses, who issued reports and were deposed, filing a pretrial statement with extensive exhibit and witness lists, and filing (and responding to) thirteen motions *in limine*.  *Id.*

C.      The Settlement Terms are Fair, Reasonable, and Adequate.

Through this settlement, class members will be eligible to recover cash monetary amounts equal to 189% of the amount that they paid in EDP deductions/payments during the class period. Schwab Decl. ¶ 14.  The settlement is therefore affording class members almost two times the

single damages available if Plaintiffs had prevailed on behalf of the entire class at trial on all three theories of liability and the Court had awarded damages equal to the amounts deducted from Plaintiffs' wages or tips. *Id.*; Fla. Const. Art. X, § 24(e). Additionally, the settlement includes claims for all class members going back five years before the filing of the complaint, a limitations period that would only have been available to Plaintiffs if they had proven at trial that the violation was willful. Schwab Decl. ¶ 14; Fla. Const. Art. X, § 24(e). The fact that class members will be recovering their full potential damages for the amounts actually deducted from their wages for participation in the EDP plus an additional equal monetary amount (and above this a significant amount in dining cards, *see infra*) supports a conclusion that the settlement is fair, reasonable, and adequate. *See Wiand v. Stoel Rives LLP*, 2017 WL 8314660, at *3 (M.D. Fla. Sept. 7, 2017) (holding that proposed settlement was in range of potential recovery where class members "could ultimately recover 50% of their losses" through settlement).

A total of 673 class members submitted timely and valid claim forms to participate in the settlement. Keough Decl. ¶ 9. Another 31 individuals submitted timely but deficient claim forms and were afforded fifteen additional days to cure the deficiencies. *Id.* The total value of the amounts claimed by the 673 class members comes to $514,201.93 in cash payments and $542,350 in Dining Card payments. Schwab Decl. ¶ 16. The minimum amount claimed is $17.03 in cash payments and $25 in Dining Card amounts, and the maximum amount claimed is $3,815.79 in cash payments and $4,025 in Dining Card amounts. The average amount to be received by claiming class members is $758.10 in cash payments and approximately $800 in Dining Card amounts. *Id.*

Additionally, class members that did not return their claim forms in the initial 60-day time period shall have an additional seven (7) months to claim their portion of the Dining Card

allocation.  The Dining Cards are equal to approximately twice their EDP deduction amounts.  As of May 9, 2019, seven class members had submitted claim forms that came in after the original claim deadline but will be eligible to receive their Dining Card amounts from the settlement. Keough Decl. ¶ 9.  After extensive negotiations, the Parties have agreed that the use of those dining cards shall be as unrestricted as possible.  Schwab Decl. ¶ 15; Ex. 1 at II.B.2.  Specifically, the dining cards may be used at any Landry's owned and affiliated restaurant in the United States subject to the relevant rules, procedures, and protocols of the individual Landry's restaurant locations; they may be used in conjunction with the Employee Discount Program and/or in conjunction with any other coupon, gift card, or discount; they may be used to purchase alcoholic beverages unless prohibited by state law; and individuals using the dining cards will not have to identify themselves or demonstrate that they are members of the class.  Schwab Decl., Ex. 1 at II.B.2.  Moreover, the parties have agreed that the opportunity to recover these dining cards shall be held open for nine months after the issuance of class notice (an extension of several months past the agreed-upon claim deadline).  Schwab Decl., Ex. 1 at II.A.4.  Other terms for the use of the dining cards are that:  they do not expire until December 31, 2020; they shall be issued in denominations of $25 and $50; the entire balance of any one dining cards must be used on a single transaction and any remaining balance is forfeited; the dining cards will not be replaced if lost or stolen; and the dining cards cannot be used for gratuities.  Schwab Decl., Ex. 1 at II.B.2. Significantly, the dining cards that the class members will receive are similar to dining cards Landry's provides to the general public for customer service issues.  Schwab Decl. ¶ 15.  These dining cards supplement the significant monetary payment discussed above.  It is significant that the dining cards are in addition to (not instead of) monetary relief and are transferable and usable like cash at a large number of restaurants.

Based upon their extensive experience in wage and hour collective and class actions, Class Counsel believes the Settlement Agreement is fair, reasonable, and adequate and should be approved. Schwab Decl. ¶ 18. It bears all the indicia of fairness warranting approval as Plaintiffs have been represented by experienced counsel, who in the "adversarial context of a lawsuit," engaged in serious, informed, arms-length negotiations of "a *bona fide* dispute . . . under the Act." *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d at 1353-54 (11th Cir. 1982). To summarize: class members are eligible to receive a monetary payment of almost two times the amounts they paid in EDP deductions/payments plus an additional amount in essentially unrestricted dining cards; the claim period was sixty days to claim both monetary relief and dining cards plus an additional seven months to obtain dining cards only; and the class includes claims by class members that extend back a full five years before the filing of the complaint.

It is the judgment of Class Counsel that this is a settlement of significant value to class members and that, when compared to the risks, costs, uncertainty, and delay which are tantamount to continued litigation, the benefits of the Settlement largely weigh in favor of approval. *See* Schwab Decl. ¶ 18.

D.     Service Payments to Plaintiffs Blocher and Levi are Warranted.

The parties have agreed that Plaintiffs Jonathan Blocher and Joseph Levi may seek service payments of $15,000 each. *See* Schwab Decl., Ex. 1 at II.B.1. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001); *see Holman v. Student Loan Xpress, Inc.,* 778 F. Supp. 2d 1306, 1319 (M.D. Fla. 2011) (finding that a "request for service awards for each class and sub-class representative appears both reasonable and consistent with prevailing practice"); *Allapattah Services, Inc. v.*

*Exxon Corp.,* 454 F. Supp. 2d 1185, 1218 (recognizing that "there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action"). As one court recently noted:  "[enhancement] awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. . . .  It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 483 (S.D.N.Y. Apr. 29, 2013).

In this case, Plaintiffs Blocher and Levi spent a significant amount of time on this litigation. First, they both sat for full-day depositions and responded to Defendants' written discovery. Schwab Decl. ¶ 19.  Second, they attended three mediations.  *Id*.  Two of those mediations required Plaintiffs Blocher and Levi to travel—first to Atlanta, Georgia and then to Miami, Florida—and all three of the mediations required them to take time off from work without pay.  *Id*.  Plaintiffs Blocher and Levi had also prepared to attend the trial that was scheduled for October 2018 which was expected to go for several weeks.  *Id*.  Third, Plaintiff Blocher and Levi both assisted Class Counsel by providing information crucial to drafting pleadings and developing case strategy.  *Id*. Fourth, this is a case in which the named plaintiffs undertook the litigation at some risk to themselves, where Defendants were pursuing counterclaims against them. Dkt. No. 104.  Finally, in exchange for the proposed service payments, Plaintiffs Blocher and Levi have both agreed to sign separate general releases of claims against Defendants and have agreed to non-disparagement and non-reinstatement provisions.  Schwab Decl. Ex. 1, Ex. A (General Release).

Service payments in the amount of $15,000 for Plaintiffs Blocher and Levi are appropriate and reasonable and consistent with awards made by other courts in Florida and elsewhere in comparable circumstances.  *See Carter v. Forjas Taurus S.A.*, No. 1:13-CV-24583-PAS, 2016 WL

3982489, at *15 (S.D. Fla. July 22, 2016), *aff'd,* 701 F. App'x 759 (11th Cir. 2017) ("In light of the two-and-a-half years of service on behalf of the Class, involving, *inter alia*, assisting in the initial investigation, as well as sitting for depositions, other meetings with Class Counsel, and attending Court hearings, Plaintiff Chris P. Carter has earned a service award of $15,000 for representing the Class."); *James D. Hinson Elec. Contracting Co. v. BellSouth Telecommunications Inc.*, No. 3:07-CV-598-TJC-MCR, 2012 WL 12952592, at *3 (M.D. Fla. July 30, 2012) (Court awarded $15,000 service awards for each of two named plaintiffs); *Cabot E. Broward 2 LLC v. Cabot*, No. 16-61218-CIV, 2018 WL 5905415, at *11 (S.D. Fla. Nov. 9, 2018) (Court awarded incentive awards of $50,000 each to two named plaintiffs which had worked closely with lawyers, reviewed pleadings, worked on discovery, and traveled for depositions and mediations); *see also, e.g.*, *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (Court awarded $20,000 each to two named plaintiffs who "helped counsel formulate factual and legal theories for the case, assisted in identifying class members and other witnesses, responded to interrogatories and depositions, attended settlement conferences, monitored negotiations, and assumed responsibility for safeguarding the interests of other class members"); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004), *amended,* No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (Court awarded $25,000 each to five named plaintiffs who each "provided verified answers to interrogatories and produced documents in response to document requests," "expended time in preparing for depositions and gave testimony at depositions," and were "present at the initial mediation sessions"). Moreover, notwithstanding the reasonableness of the requested service payments, the parties' Settlement Agreement is not contingent on the approval of the payment of

these amounts.  Instead, Plaintiffs Blocher and Levi have agreed to accept the service payments the Court deems appropriate after a final approval hearing has been held.  *See* Schwab Decl. ¶ 19.

**V.     PLAINTIFFS' REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE.**

    A.     Plaintiffs' Requested Attorneys' Fees Are Reasonable.

Article X, Section 24(e) of the Florida Constitution mandates that, "upon prevailing," plaintiffs "shall be awarded reasonable attorney's fees and costs."   Under the FLSA, which provides the guiding jurisprudence for Article X, Section 24 of the Florida Constitution, attorneys' fees for prevailing plaintiffs are mandatory.  *See* Fla. Const., Art. X, §24(f); 29 U.S.C. §216(b); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").  The parties' Settlement Agreement permits Class Counsel to petition the Court for $1,400,000 for payment of attorneys' fees and $100,000 in costs and litigation expenses (including the cost of settlement administration).

Significantly, in June 2016, after two of the named plaintiffs accepted offers of judgment, Plaintiffs submitted a fee petition for $553,627 in attorneys' fees and $30,696.26 in costs for their work up to that time related to those two plaintiffs.  Dkt. No. 143.  Class Counsel provided significant detail regarding the reasonable hours worked for this petition, and Magistrate Judge Sneed found all of the hours submitted to be reasonable.  Dkt. 169, at 8-9.  The amount to which the parties agreed for attorneys' fees and costs in this settlement includes any amount that would be awarded pursuant to the June 2016 fee petition, *i.e.*, Plaintiffs have agreed not to separately pursue this fee petition as part of the settlement.  *See* Schwab Decl. ¶ 20.

14

Since the submission of that fee petition in June 2016, Class Counsel have spent well over 3,000 hours on this case, including filing two summary judgment motions, preparing for trial including filing of the pretrial statement with witness and exhibit lists, filing and/or responding to a total of thirteen motions *in limine*, filing a motion to amend the complaint and to dismiss counterclaims, opposing other substantive motions including motions to dismiss and to compel arbitration, and spending hundreds of hours on modeling of the damages calculations for the class, *inter alia*. Schwab Decl. ¶ 21.

The amount of $1,400,000 in attorneys' fees represents a significant discount on the actual attorneys' fees incurred to date by Class Counsel. *See* Schwab Decl. ¶ 20. As demonstrated by Class Counsel's contemporaneous billing records, which are attached to the Declaration of Hillary Schwab, Esq. as Exhibit 3, Class Counsel have expended approximately 5,144.6 hours on the case to date. Schwab Dec. ¶ 22. In the exercise of billing judgment, Class Counsel have reduced their hours down to 4,445.8 hours. Applying the hourly rates proposed by Class Counsel in their initial Motion for Attorneys' Fees filed on June 23, 2016 (Dkt. No. 143) to these reduced hours, the total attorneys' fees are calculated as follows:

| Timekeeper | Hours | Rate | Lodestar Fees |
|---|---|---|---|
| Sam J. Smith | 869.2 | $500 | $434,620 |
| Hillary Schwab | 571.8 | $450 | $257,310 |
| Marguerite M. Longoria | 19.1 | $450 | $8,595 |
| Loren Donnell | 1,217.8 | $375 | $456,675 |
| Tamra Givens | 733.5 | $375 | $275,063 |
| Christine M. Jalbert | 50.0 | $350 | $17,500 |
| Rachael Wood | 72.4 | $350 | $25,340 |
| Iris (Connie) Lowe (paralegal) | 381.1 | $125 | $47,638 |
| Kelly Slovinac (data analyst) | 204.4 | $215 | $43,946 |
| Nicholas Puerling (data analyst) | 60.0 | $90 | $5,400 |
| Patricia Smith (paralegal) | 231.5 | $90 | $20,835 |
| Noah Smith (data analyst) | 35.0 | $90 | $3,150 |
| TOTAL | 4,445.8 | | $1,596,071 |

Schwab Decl. ¶ 23.  The hours submitted and the proposed rates are reasonable, as explained in more detail below.

1.    Reasonable Hours

Attached to the Declaration of Hillary Schwab, Esq. as Exhibit 3 are the detailed time records for the timekeepers who performed work on this case.  Each timekeeper in this case has maintained their billable hours as to each activity with detail and each time-entry represents the distinct contribution of that timekeeper.  Schwab Decl. ¶ 22.  The timekeepers in this case have maintained their time contemporaneously with the tasks performed and have reported each discrete task in six-minute intervals.  *Id.*  The hours expended by Class Counsel are reasonable and consistent with hours expended in similar class action litigation. *Id.*  Indeed, the work expended by Class Counsel in this case has been substantial.  The case has almost four hundred docket entries, including three motions for summary judgment and a motion for class certification, as well as numerous other substantive motions.  Thirteen depositions were conducted by the parties, more than five discovery motions were filed, briefed, and decided, and Defendants produced over 25,000 pages of documents in discovery.  These documents included all payroll records for class members and other documents from which Plaintiffs could calculate damages.  Class Counsel have spent hundreds of hours reviewing these documents and calculating damages for class members.  Additionally, the Parties spent significant time preparing for trial, including retaining a total of three expert witnesses, who issued reports and were deposed, filing a pretrial statement with extensive exhibit and witness lists, and filing (and responding to) thirteen motions *in limine*.  Schwab Decl. ¶ 13.

2.    Reasonable Rates[2]

The hourly rates listed above are reasonable and consistent with (and/or lower than) rates charged by other attorneys who litigate employment class and collective action cases.  Schwab Decl. ¶ 22.  Evidence of a reasonable rate, which is based on "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," may be made by a showing of "direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Norman v. Housing Authority of City of Montgomery*, 836 F. 2d 1292, 1299 (11th Cir. 1988).  Such evidence may be in the form of, but is not limited to: (1) amounts awarded to attorneys with similar experience in similar cases; (2) affidavits of attorneys with similar experience stating what they would charge in a similar case; (3) the amount charged by opposing counsel in the particular case or in similar cases; (4) the amounts awarded to the undersigned attorneys in prior litigation; and (5) legal bar journals and surveys. *See* Moore's Federal Practice, Civil § 54.190 at 10.  Plaintiffs support this petition with the Declarations of Attorneys Christine Webber, David Linesch and Richard Johnson, who each have significant class action experience and knowledge of the rates charged and work needed to prosecute a wage and hour class action.  Dkt. Nos. 145-47.

Linesch, a well-accomplished attorney for 33 years who practices employment law in this District, has been appointed class counsel by this Court, and has specific knowledge of the rates charged by counsel in the Middle District of Florida for cases such as this and specific knowledge of the experience of Class Counsel, avers that the rates sought by Class Counsel are reasonable for the skill and experiences of the individual timekeepers.  *See* Dkt. 146, Declaration of David

---

[2]    The hourly rates proposed herein are the rates that Class Counsel proposed in their initial fee petition in 2016. Though the case has been litigated for an additional three years, Class Counsel have not proposed updated hourly rates even though their billing rates have increased.  Schwab Decl. ¶ 23 n.1.

Linesch ("Linesch Decl."). Based on his long career litigating employment law cases in the Middle District of Florida, including FLSA collective actions, Linesch observed that a "wage and hour putative class action, like this case, presents complex legal issues that warrant retaining experienced counsel with sufficient skill to litigate them" and to defend against top tier firms, and that Class Counsel possesses such experience. *See* Linesch Decl. ¶¶ 6-8 (stating counsel at Burr & Smith "provide very high quality legal representation in FLSA collective actions and state wage and hour class actions" and that Hillary Schwab's "skill level is demonstrably high").  Linesch compared the skill of Sam J. Smith, who seeks an hourly rate of $500 and has 30 years of litigation experience, to William and Karen Amlong, who were awarded $500 per hour in 2015 in *Smith v. City of New Smyrna Beach,* Doc. 234 (Report and Recommendation), Case No. 6:11-cv-01110-RPD-KRS (M.D. Fla. Apr. 24, 2015), *approved,* Doc. 235 (M.D. Fla. May 20, 2015) (Dalton, Jr., J.) and to Susan Eisenberg, who was awarded a rate of $550 per hour in 2015 in *Malk v. Kaplan University,* Doc. 63 (Report and Recommendation), Case No. 6:13-cv-1469-Orl-22KRS (M.D. Fla. July 21, 2015), *approved,* Doc. 64 (M.D. Fla. Aug. 6, 2015) (Conway, J.).  Linesch Decl. ¶ 8. He compared Marguerite Longoria who was Board Certified in Labor and Employment Law by the Florida Bar and had 20 years of experience at the time of her work on this matter; and Hillary Schwab, who has among other varied legal experiences working for the courts and non-profit organizations, more than ten years of experience in wage and hour class action, to that of Jennifer Williams, who was awarded $450 to 475 in *Malk v. Kaplan University*. *Id*., ¶¶ 9, 13.  He compared the work and experience of Loren B. Donnell and Tamra Givens, 13 and 14 years of experience, respectfully, to that of Jennifer Daley, who was awarded $400 per hour in *Smith v. City of New Smyrna Beach,* Doc. 234 (Report and Recommendation), Case No. 6:11-cv-01110-RPD-KRS (M.D. Fla. Apr. 24, 2015), *approved,* Doc. 235 (M.D. Fla. May 20, 2015) (Dalton, Jr., J.) or Patrice

P. DiLorenzo, who was awarded $375 in the same case. *Id*. at 10. Linesch compared the work of Christine M. Jalbert and Rachael L. Wood to that of a similar rate set for two attorneys, Amy Tingley and Scott Livingston with similar experience, in *Signature Pharmacy, Inc. v. Soares,* Doc. 428, Case No. 6:08-cv-1853 (M.D. Fla. Dec. 21, 2012). *Id*. at 11. Having worked closely with data analyst Kelly Slovinac and paralegal Connie Lowe on other FLSA collective and wage and hour class actions, Linesch opined their rates were reasonable for their experience and the work they performed. *Id*. at ¶ 12.

Attorney Richard E. Johnson, whose very considerable experience and practice includes chair of the Florida Bar's Labor & Employment Law Committee, President and Founder of Florida National Employment Lawyers Association, and author of 25 amicus briefs, supports that Burr & Smith is one of the few firms in Florida capable of litigating a case of this complexity. *See* Dkt. 145, Declaration of Richard E. Johnson ("Johnson Decl."). Johnson is uniquely familiar with the hourly rates of labor and employment lawyers in Florida, having litigated his own fee applications and those of others, having served as an expert witness in fee applications, having given affidavits in fee applications, and having conducted surveys on the hourly rates of attorneys in employee-side employment cases in Florida and the factors that make those rates greater or lesser for a particular lawyer. *See* Johnson Decl. ¶¶ 13-15. He finds, based on his experience and his knowledge of the skill, reputation, and experience of Class Counsel, that the rates sought by some of Class Counsel is actually "about $50 per hour low." *Id*., ¶¶ 26-43. Finally, Attorney Christine Webber, a class-action practitioner, who has worked closely with Class Counsel on complex class actions testified:

> In my experience working on class and collective action cases in the Eleventh
> Circuit and around the country, I have had numerous opportunities to review the
> rates charged and awarded by courts in fee shifting class actions such as this case.
> I find the rates sought in this case to be in line with or below those awarded in

similar cases for counsel of the skill level displayed in this case. In addition, I am aware of the skill and experience of attorneys and paralegals who work for Burr & Smith, having worked with them in the prosecution of a large gender discrimination class action. They are very highly skilled attorneys and paralegals performing at the top of the tiers of attorneys and paralegals who litigate wage and hour class actions.

Dkt. 147, Declaration of Christine Webber ("Webber Decl."), ¶ 15.

In the Magistrate Judge's report and recommendation on Plaintiffs' fee petition, the Magistrate Judge recommended that the proposed hourly rates for Class Counsel be reduced. Plaintiffs filed an objection to that report and recommendation, as to which the Court noted at the hearing on July 31, 2018: "I believe that a larger than local hourly rate is appropriate, and I believe that a larger than typical expense is necessary because I'm just familiar with what it takes to get a resolution of any aspect of this case done. . ." Dkt. 354 (Jul. 31, 2018 Hrg. Tr.) at 5.

Based on the foregoing, the attorney fee rates set forth above are reasonable.

B.    <u>Plaintiffs' Requested Costs Are Reasonable</u>.

Plaintiffs also seek an award of up to $100,000 in litigation costs, including the costs of the settlement claims administrator. Class Counsel have expended $70,711.99 in costs and expenses. Schwab Decl. ¶ 23. Additionally, the amount owed to the settlement claims administrator (which is to be paid in full out of the award of litigation costs) is expected to be approximately $25,000. *Id*. The costs therefore come to $95,711.99 ($70,711.99 + $25,000). Schwab Decl. ¶ 25. However, the amount owed to the claims administrator may increase. Per the Settlement Agreement, therefore, Class Counsel request that the Court award costs of $95,711.99 up to $100,000 (to the extent that the costs of the claims administrator exceed $25,000).

## VI.     **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court issue the Order, filed concurrently herewith finally approving the Settlement Agreement.  A proposed Order granting Plaintiff's Motion for Final Approval is attached as Exhibit 2 to the Declaration of Hillary Schwab.

### **LOCAL RULE 3.01(g) CERTIFICATION:**

Counsel for the Plaintiffs certifies that counsel for Defendants has been consulted and has represented that Defendants do not oppose this Motion.


Dated: May 17, 2019                         Respectfully submitted,

                                            */s/ Loren B. Donnell*
                                            Sam J. Smith
                                            Florida Bar No. 818593
                                            Loren B. Donnell
                                            Florida Bar No. 0013429
                                            Tamra Givens
                                            Florida Bar No. 657638
                                            BURR & SMITH, LLP
                                            111 2nd Avenue N.E., Suite 1100
                                            St. Petersburg, FL 33701
                                            (813) 253-2010
                                            ssmith@burrandsmithlaw.com
                                            ldonnell@burrandsmith.com
                                            tgivens@burrandsmithlaw.com

                                            Hillary Schwab, *pro hac vice*
                                            Mass. BBO# 666029
                                            FAIR WORK, P.C.
                                            192 South Street, Suite 450
                                            Boston, MA 02111
                                            (617) 607-3261
                                            hillary@fairworklaw.com

                                            Counsel for the Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I caused a copy of this document to be served via

CM/ECF upon counsel of record.

/s/ Loren B. Donnell
Loren B. Donnell